UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID GLENNIE,                                  :
         Plaintiff,                      :
                                     :
       v.                                       :            C.A. No. 21-231JJM
                                     :
MERRICK B. GARLAND, et al.,                     :
         Defendants.                     :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On December 11, 2019, Plaintiff David Glennie, previously a resident of Massachusetts and New Hampshire, was charged in the District of Massachusetts with trafficking methamphetamine; following his arrest, he was detained at the Donald W. Wyatt Detention Facility ("Wyatt") beginning on January 16, 2020.  Plaintiff was adjudicated guilty on April 13, 2021, and remained at the Wyatt until he was sentenced on August 4, 2021.  He started serving his sentence at FCI Fort Dix in New Jersey and is now at USP Lewisburg, Pennsylvania.[1] Glennie v. Garland, C.A. No. 21-231JJM, 2022 WL 1801040, at *1 & n.2 (D.R.I. June 2, 2022).

This case was filed *pro se* on May 26, 2021, after Plaintiff was adjudicated and while he was awaiting sentencing at the Wyatt.  Plaintiff seeks money damages and injunctive/declaratory relief alleging that, while he was a federal prisoner, he was deprived of his rights pursuant to the Eighth Amendment and the "[D]ue [P]rocess [C]lause" of the United States Constitution by delay in the delivery of needed medical care, by the failure to provide a prescribed diagnostic procedure and necessary dental care and by the failure to protect him from contracting COVID-

---

[1] This background information is not included in Plaintiff's pleading.  It is drawn from the public docket in the District of Massachusetts.  United States v. Glennie, 19-cr-10465-RWZ (D. Mass.); see also Find an Inmate, FEDERAL BUREAU OF PRISONS https://www.bop.gov/mobile/find_inmate/byname.jsp.  For example, Plaintiff's pre-arrest residence may be found at ECF No. 66 at 9.

19.  The operative complaint[2] names as Defendants[3] the Central Falls Detention Facility

Corporation ("CFDFC"),[4] sued as the Wyatt's "owner and operator"; Daniel W. Martin, sued as

the Wyatt's warden ("the Warden"); Dr. Edward Blanchette, alleged to be "the doctor at [the

Wyatt]"; Ron LaBonte, alleged to be the Wyatt's "Health [S]ervice Administrator"; and N.

Rodrigues, alleged to be the Wyatt's "Mental Health Coordinator."  Complaint ¶¶ 6-9, 11.  All

individual Defendants are sued in their individual and official capacities.  Plaintiff alleges that all

Defendants were acting "under color of Federal Law" and asserts his constitutional claims

pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388

(1971) ("Bivens").  Complaint at 1 & ¶ 12.  Alternatively, Plaintiff now argues that his pleading

should be interpreted as claiming that Defendants were persons acting under color of state law,

implicating 42 U.S.C. § 1983.  See e.g., ECF No. 42 at 9.  In addition to Bivens/§ 1983 claims,

Plaintiff has also asserted state law claims against Dr. Blanchette, Mr. LaBonte and Ms.

Rodrigues for "[m]edical [n]egligence."  Complaint at 11-13.

Now pending before the Court are two motions to dismiss brought pursuant to Fed. R.

Civ. P. 12(b)(6), one filed by Dr. Blanchette and the other by CFDFC, the Warden, Mr. LaBonte

and Ms. Rodrigues.  ECF Nos. 29, 31.  Both are referred to me for report and recommendation.

---

[2] The operative pleading is the amended complaint ("complaint") docketed at ECF No. 28.  Because Plaintiff was pro se when it was filed, I have reviewed its allegations with the requisite lenience.  Haines v. Kerner, 404 U.S. 519, 520-521 (1972) (per curiam).  Soon after the filing of the amended pleading, the Court appointed pro bono counsel for the limited purpose of responding to the motions to dismiss.  Glennie, 2022 WL 1801040, at *2-3.

[3] The complaint also named Merrick Garland, the Attorney General of the United States, and Wing Chau, the United States Marshal for the District of Rhode Island.  Complaint ¶¶ 4-5.  These defendants were voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  ECF No. 41.  In addition, the complaint named Dr. L. Bickham, alleged to be a dentist practicing at the Wyatt.  Complaint ¶ 10.  She has never been served and is not joined as a defendant.  Glennie, 2022 WL 1801040, at *1 n.1.

[4] The complaint erroneously named CFDFC as the "Donald W. Wyatt Detention Facility Corporation."  Complaint ¶ 6.  Mindful of Plaintiff's pro se status and with the parties' acquiescence, I interpret the pleading as naming CFDFC as the Wyatt's owner/operator.  See Vick v. United States Marshals Service, Civil No. 19-cv-267-SJM-AKJ, 2019 WL 2325996, at *1-2 (D.R.I. May 31, 2019).

2

I.     **Background**

*Syphilis*.  Chronologically, Plaintiff's first medical issue arose at intake,[5] when he "mentioned" that it was likely that he had recently been exposed to a sexually transmitted disease; he was told he would have an examination and blood work within fourteen days.  Complaint ¶ 22.  After Plaintiff made repeated requests (on February 2, 7, 13, and 21, 2020), on March 8, 2020, he was examined, and, on March 10, 2020, he was "called . . . for . . . blood work."  Id. ¶¶ 23-28.  On March 16, 2020, Plaintiff saw Dr. Blanchette who told him that he had syphilis and prescribed treatment.  Id. ¶ 29.  There is no allegation that the treatment was not appropriate or effective or that the "[o]ne and one half month[]" delay exposed Plaintiff to actual or potential risk of objectively serious harm.  Id. ¶ 28.

*Cardiac/Pulmonary Issues*.  Next, on March 23 and 27, 2020, Plaintiff requested medical treatment for complaints of shortness of breath/sweating on minimal exertion and headache.  Id. ¶¶ 30-31.  On both days and again on March 29, 2020, he was seen by a nurse who diagnosed an elevated pulse and abnormal EKG.  Id. ¶¶ 30-32.  On March 30, 2020, (that is, within one week of Plaintiff's initial complaint), Dr. Blanchette ordered that Plaintiff be sent to the Rhode Island Hospital ("RIH") emergency room, where he was seen and diagnosed with "Sinus Tachycardia,[6] a thickening Distal Esophagus with inflammatory stranding, and severe Centrilobular Emphysema."[7]  Id. ¶¶ 33-34.  He was released the same day with a prescription for medication and instructions to follow up with a cardiac sonogram.  Id. ¶ 35.  On returning to Wyatt, Plaintiff

_____

[5] The complaint does not give the date of this encounter, but it presumably is sometime soon after Plaintiff was first detained at the Wyatt in January 2020.

[6] Tachycardia is a "[r]apid beating of the heart."  Fitzgerald v. Astrue, Civil Action No. 2:08-CV-170, 2009 WL 4571762, at *2 n.1 (D. Vt. Nov. 30, 2009) (internal quotation marks omitted).

[7] Centrilobular Emphysema is a "long-term, progressive lung disease considered to be a form of COPD [chronic obstructive pulmonary disease]."  United States v. Weissinger, 542 F. Supp. 3d 882, 888 (E.D. Mo. 2021).

was monitored overnight; he saw the nurse and Dr. Blanchette prescribed "Metapropolol,"[8] with the "plan to monitor vital signs."  Id. ¶ 36.  On April 6, 13, 15, 23 and 28, 2020, Plaintiff requested to see Dr. Blanchette about the RIH diagnoses, as well as "side effects to his blood pressure meds."  Id. ¶¶ 37-41, 43.  On April 16 and 24, 2020, he was seen by the nurse.  Id. ¶¶ 40, 42.  On May 7, 2020, Plaintiff "[f]inally" saw Dr. Blanchette, who was "very dismissive" and "insulted Plaintiff['s] intelligence" by attributing his symptoms to hyperventilating and anxiousness.  Id. ¶ 45.  On November 13, 2020, Plaintiff saw Dr. Blanchette again, who told Plaintiff that his heart rate was "closer to" normal because of the Metoprolol and prescribed "Asmonex" for emphysema.  Id. ¶ 55.  On December 11, Dr. Blanchette saw Plaintiff again to "follow up on the increase" in Metoprolol.  Id. ¶ 56.

Regarding this course of treatment, the complaint alleges only that Dr. Blanchette "[w]ent against outside [RIH] diagnosis" and "avoided many requests . . . for Medical Care."  Id. ¶¶ 95(B), 103(C).  There is no allegation that Dr. Blanchette's professional medical opinion that Plaintiff's treatment should consist of the monitoring of vital signs and the prescribing of Metoprolol for elevated heart rate and Asmanex for emphysema, as opposed to a diagnostic cardiac sonogram as prescribed by RIH, resulted in treatment that was not appropriate or effective.  Nor is there any allegation that Dr. Blanchette's course of treatment exposed Plaintiff to actual or potential risk of objectively serious harm.  See id. ¶¶ 96, 103(C), 112(A)-(C).

*Mental Health*.  Plaintiff's complaint about delayed mental health treatment begins with the allegation that, on March 29, 2020, he asked for an appointment about increasing his

---

[8] This appears to be a reference to Metoprolol, a medication used to treat chest pain, hypertension, and cardiac issues, including tachycardia.  Ingram v. Comm'r of Soc. Sec., Case No. 2:21-cv-10267, 2022 WL 1734936, at *3 (E.D. Mich. Jan. 26, 2022), adopted, 2022 WL 414381 (E.D. Mich. Feb. 10, 2022); Knepp v. Paraway, No. 1:19-cv-00153, 2020 WL 7865401, at *1 (W.D. Pa. Nov. 18, 2020), adopted, 2020 WL 7864199 (W.D. Pa. Dec. 31, 2020).

medication for depression (Trazadone), which was set for the next day but Plaintiff missed because he was getting treatment at RIH.  Id. ¶¶ 75-76.  A week later, on April 6, 2020, Plaintiff met with "Mental Health" to adjust medication.  Id. ¶ 77.  On April 13, Plaintiff again requested a visit to discuss medication.  Id. ¶ 78.  In reply, "Mental Health" asked Plaintiff what was not working and "stated maybe Plaintiff would benefit from talk therapy."  Id. ¶¶ 78-79.  On May 13, 2020, Plaintiff's medication was adjusted without an appointment.  Id. ¶ 80.  On June 22, 2020, Plaintiff sent a third request about mental health medication and saw the "Doctor" on June 27; again, medication was adjusted, Plaintiff requested talk therapy and was told it would be set up.  Id. ¶¶ 81-84.  On August 19, Plaintiff sent a fourth request to "Mental Health" stating that his medication was not working and again it was "changed."  Id. ¶¶ 85-86.  On November 30, 2020, and January 7, 2021, Plaintiff reminded "Mental Health" that he was still waiting for talk therapy and to "see the Doctor."  Id. ¶¶ 87-89.  On January 10, 2021, Plaintiff met with Ms. Rodrigues who adjusted his medication again.  Id. ¶ 90.  On January 11 and 25, 2021, Plaintiff reiterated his request for talk therapy.  Id. ¶¶ 91-92.  "Finally," on January 26, 2021, Plaintiff met with a therapist for talk therapy.  Id. ¶ 93.  The pleading alleges that Ms. Rodrigues acted with "Deliberate Indifference when she delayed proper Mental Health Therapy."  Id. ¶ 104.  There is no allegation that the seven-month delay from Plaintiff's request for talk therapy exposed Plaintiff to actual or potential risk of objectively serious harm.

*Arm Sores/Scarring.*  Plaintiff's next medical issue arose on June 30, 2020, when Plaintiff requested a sick call for "sores on his arms causing scaring [sic]."  Id. ¶ 47.  On the following day Plaintiff was seen by the nurse, who treated him with Bacitracin and put him on the list to see Dr. Blanchette.  Id. ¶ 48.  On September 14, 2020, Plaintiff again asked to see Dr. Blanchette, but saw a nurse on September 15; on November 13, 2020, he saw Dr. Blanchette, who prescribed

a topical steroid.  Id. ¶¶ 50-51, 55.  On January 12, 2021, Plaintiff asked to see Dr. Blanchette

again because the arm sores had become "hot, swollen, draining and clearly infected"; he saw the

nurse the same day and was given more Bacitracin.  Id. ¶ 57.  On January 14, 2021, Plaintiff saw

Dr. Blanchette who prescribed Doxycycline[9] for thirty days.  Id. ¶ 58.  On February 15, 2021,

Plaintiff followed up with the nurse; Dr. Blanchette was contacted and prescribed thirty more

days of Doxycycline.  Id. ¶ 60.  On March 30, the nurse who saw Plaintiff was "very shocked"

that he had been on Doxycycline for sixty days and "retrieve[d]" Dr. Blanchette, who examined

the sores and scarring and chided Plaintiff for "picking at them."  Id. ¶¶ 62-63.  Plaintiff told Dr.

Blanchette that scabs came off when he used a towel after showering; Dr. Blanchette responded,

"Don't be ridiculous don't pick at them" and "walked away."  Id. ¶ 63.  The nurse gave Plaintiff

Bacitracin.  Id.

On April 9, 2021, Plaintiff filed a grievance[10] regarding the arm sores/scarring and Dr.

Blanchette's "[r]idiculous" comment.  Id. ¶ 64.  On April 30, 2021, Plaintiff saw Dr. Blanchette,

who examined the sores and scarring and told Plaintiff he would request that the United States

Marshals Service ("USMS") take Plaintiff to see a dermatologist "outside" of Wyatt.  Id. ¶ 66.

On June 8, 2021, Plaintiff saw an "outside" dermatologist who diagnosed eczema and prescribed

a topical steroid, the same topical steroid that Dr. Blanchette had prescribed.  Id. ¶¶ 71-72.  On

---

[9] Doxycycline is a medication primarily used to treat skin infections.  Eon Labs Mfg., Inc. v. Watson Pharm., Inc., 164 F. Supp. 2d 350, 353 (S.D.N.Y. 2001).

[10] On May 4, 2021, Plaintiff's grievance regarding Dr. Blanchette's comment about the arm sores was denied with a "memo" from Mr. LaBonte stating that Plaintiff had "detail[ed] . . . a perception that the treating physician insulted you when he provided patient education.  Specifically, that you should refrain from physically manipulating the sores . . . on your body."  Complaint ¶ 67.  Plaintiff appealed, complaining that LaBonte had misquoted Dr. Blanchette.  Id. ¶¶ 68, 95.  On May 17, Plaintiff was informed that the grievance had "been reviewed" with Dr. Blanchette.  Id. ¶ 69.  The pleading charges that Dr. Blanchette's rudeness and unspecified "lie," which Mr. LaBonte failed to correct, amount to a denial of Plaintiff's constitutional due process rights by each of them.  Id. ¶¶ 67-68, 95, 102-03, 112.

June 11, 2021, Plaintiff sent a note advising that the newly prescribed topical steroid was the same previously prescribed medication that had not been effective.  Id. ¶ 73.  On June 20, 2021, Plaintiff received a handwritten note from Dr. Blanchette informing Plaintiff that he "wasn't surprised" about the topical steroid and instructing Plaintiff how to treat the arm sores.  Id. ¶ 74. The complaint is silent concerning the result of Dr. Blanchette's instructions but alleges that Dr. Blanchette continually delayed "Medical care" and "avoided" Plaintiff's many requests to see him, amounting to deliberate indifference causing "continued pain and scaring [sic] on . . . Plaintiff['s] arms," as well as that the Warden and Mr. LaBonte acted with deliberate indifference in allowing Dr. Blanchette's "Medical Negligence to occur."  Id. ¶¶ 95(B), 100, 102.

*Refusal to Provide Dentures*.  The next focus of Plaintiff's pleading is on his dental troubles.  According to the complaint, these began on October 14, 2020, when Plaintiff asked to have some teeth extracted and to be fitted for dentures.  Complaint ¶ 13.  On December 18, 2020, after two requests, Plaintiff was seen by Dr. Bickham,[11] the "Dentist practicing" at the Wyatt. Id. ¶¶ 10, 14.  Dr. Bickham confirmed that Plaintiff's two top teeth were "very loose" but advised Plaintiff that the Wyatt could not provide dentures; the complaint does not allege that Dr. Bickham prescribed or even recommended dentures.  Id. ¶ 14.  In March 2021, Plaintiff lost one top tooth and again requested dentures; again, he was told "no dentures would be provided."  Id. ¶¶ 15-16.  On March 15, 2021, Plaintiff filed a denture grievance; on March 19, Dr. Bickham saw him and informed him that his "remaining [top] tooth was very mobile" and "suggested extraction."  Id. ¶¶ 17-18.  Plaintiff again requested dentures, explaining that "he would have no top teeth left to assist him with eating."  Id. ¶ 18.  On April 7, 2021, the grievance was denied; Plaintiff appealed to the Warden, who visited Plaintiff and offered to request that USMS

_____

[11] Dr. Bickham is not joined as a defendant.  See n.3 supra.

authorize an out-of-facility consultation about the need for dentures.  Id. ¶¶ 7, 19-20.  On April

29, 2021, the Warden told Plaintiff that USMS denied the request.  Id. ¶ 21.  As alleged in the

complaint, the delay in providing dentures from October 2020 until Plaintiff left the Wyatt

following sentencing in August 2021 was based on an unconstitutional USMS policy – "to wit

requiring a time factor"[12] – which the Warden "allow[ed]" and which was "follow[ed]" by Mr.

LaBonte who "administrative[ly] supervis[ed]" Dr. Bickham.  Id. ¶¶ 94(A), 95(A), 97, 100(A).

The complaint further alleges that this intentional delay of "Medical/Dental treatment" caused

Plaintiff to suffer "mouth pain and disfigurement, [and] inhibiting his ability to eat."  Id. ¶ 94(A)

& (C).

 *Failure to Protect from COVID-19.*  Plaintiff's final medical complaint arose on October

20, 2020, when he contracted COVID-19, allegedly due to his inability to socially distance.  Id. ¶

52.  Plaintiff was quarantined from October 23 until November 9, 2020, and alleges that he

endured harsh symptoms and now has continued "short and long term memory problems" due to

COVID-19.  Id. ¶¶ 52-54.  He alleges that the Warden's deliberate indifference caused this

injury.  Id. ¶¶ 100(B).

 *CFDFC Allegation.*  As to CFDFC, the complaint is vague regarding for which of these

medical/dental claims Plaintiff seeks to hold it responsible.  The pleading alleges only that

---

[12] The Court interprets the pleading as alleging that CFDFC and its agents and employees (the Warden and Mr. LaBonte) followed USMS policy that requires a delay before an individual who is detained may be considered for or fitted for dentures.  This interpretation is based on the allegations in the complaint, as supported by the content of USMS denture policy described in other judicial decisions.  See, e.g., United States v. Casner, Civil Action No. 21-cr-286-WJM, 2022 WL 16527721, at *1 n.1 (D. Colo. Oct. 27, 2022) ("USMS's policy is that dental prosthetics (*i.e.*, dentures) will be provided only for inmates who have been in custody for more than two years."); Petrazzoulo v. U.S. Marshals Serv., 999 F. Supp. 401, 404, 410 (W.D.N.Y. 1998) (based on typically short-term nature of USMS's custody over detainees, USMS policy does not authorize dentures in reliance on its determination that dentures constitute elective, rather than necessary, medical care; elective services are available on release or from Bureau of Prisons) (citing 28 C.F.R. § 0.111(k), and USMS Policy and Procedure Manual, Ch. 5.6-1(a) (1994)).

"[CFDFC] acted in deliberate indifference when it turned a blind eye on the other Defendant's unlawful conduct and Medical Negligence stated in plaintiff['s] complaint."  Id. ¶ 108.

## II.    <u>Standard Of Review</u>

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007).  A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and it must show "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.  That is, the non-conclusory factual allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.  <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011); <u>Sepúlveda-Villarini v. Dep't of Educ. of P.R.</u>, 628 F.3d 25, 29 (1st Cir. 2010).

## III.    <u>Federal Claims Arising under the United States Constitution</u>

For Plaintiff's federal constitutional claims[13] to survive, his complaint must clear two hurdles.  First, it must allege facts sufficient plausibly to establish that the named Defendants afforded him such inadequate medical and dental care resulting in injury as to deprive him of rights guaranteed by the Constitution.  <u>See</u> <u>generally</u> <u>Austin v. McCarthy</u>, Case No. 18-cv-12297, 2018 WL 3873578, at *2 (E.D. Mich. Aug. 15, 2018).  Second, Plaintiff can sue for damages or injunctive relief based on such a constitutional injury only to the extent that the law provides for

---

[13] Mindful of his *pro se* status, the Court considered whether Plaintiff's pleading could be interpreted as bringing federal tort claims against these Defendants.  Because such claims must be asserted pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and the complaint fails to allege that Plaintiff satisfied the strict exhaustion requirements applicable to any such claim, <u>Barrett ex rel. Estate of Barrett v. United States</u>, 462 F.3d 28, 36 (1st Cir. 2006); 28 U.S.C. § 2675(a), I do not recommend that he be allowed to amend to proceed under the FTCA.

a cause of action that allows him to proceed against the named Defendants.  For actions under color of federal law, as Plaintiff's complaint alleges, the only vehicle is the limited implied right of action to seek money damages in certain circumstances that was judicially created by <u>Bivens</u> and progeny.  <u>See generally</u> <u>Hulsey v. Federal Bureau of Prisons</u>, Civil Action No. 20-11078-FDS, 2020 WL 5634318, at *2 (D. Mass. Sept. 21, 2020).  For actions under color of state law, as Plaintiff now argues his pleading may be interpreted as alleging, Congress created a statutory vehicle, 42 U.S.C. § 1983, which permits suits for injunctive relief and money damages.  <u>See generally</u> <u>Clark v. Kolkhorst</u>, Case No. A-19-CV-00198-LY-SH, 2020 WL 6151570, at *7 (W.D. Tex. Oct. 20, 2020).  My analysis begins by focusing on the first issue: whether this pleading plausibly alleges that Plaintiff was injured by conduct in derogation of the Constitution.

      A.    <u>Has Plaintiff Plausibly Alleged Constitutionally Inadequate Medical/Dental Care?</u>

            1.    *Applicable Law*

While Plaintiff was a Wyatt pretrial detainee, for claims against persons acting under color of federal law (as the complaint alleges), the right to constitutionally adequate health/dental care arises pursuant to the Due Process Clause of the Fifth Amendment.  <u>Laurent v. Edwin</u>, 528 F. Supp. 3d 69, 85 (E.D.N.Y. 2021); <u>Karmue v. Remington</u>, Civil No. 17-cv-107-LM-AKJ, 2020 WL 1290605, at *13 (D.R.I. Mar. 18, 2020).  To the extent that the complaint plausibly alleges that a constitutional deprivation continued after his adjudication on April 13, 2021, the right arises pursuant to the Eighth Amendment, which prohibits cruel and unusual punishment.  <u>Baez v. Moniz</u>, 460 F. Supp. 3d 78, 88 (D. Mass. 2020).  To the extent that Plaintiff's injury was caused by inadequate medical/dental treatment arising from the conduct or omissions of a Defendant who is a person acting under color of state law during the pre-adjudication period, as Plaintiff now argues, his claim would arise pursuant to the Due Process Clause of the Fourteenth

Amendment; post-adjudication, such a claim arises pursuant to the Eighth Amendment.  See generally Spencer v. City of Boston, Civil Action No. 13-11528-MBB, 2015 WL 6870044, at *7 (D. Mass. Nov. 6, 2015).

As the interpretation of these rights has evolved, precedent developed in the First Circuit establishes that their contours are essentially the same.  That is, "[t]he Due Process Clauses of the Fifth and Fourteenth Amendments are essentially the same," so that due process cases under the Fourteenth Amendment provide guidance in due process cases arising under the Fifth Amendment and vice versa.  United States v. Neto, 659 F.3d 194, 201 n.7 (1st Cir. 2011). Similarly, the more robust body of Eighth Amendment jurisprudence is relied on by courts analyzing Due Process Clause claims of inadequate health/dental care, whether under the Fifth or the Fourteenth Amendments.[14]  Burrell v. Hampshire Cty., 307 F.3d 1, 7 (1st Cir. 2002); Silva v. Clarke, C.A. 19-568JJM, 2022 WL 1091336, at *8 (D.R.I. Apr. 12, 2022), adopted by text order, (D.R.I. May 2, 2022); Baez, 460 F. Supp. 3d at 88.  Viewed through this unified Due Process/Eighth Amendment lens, a plaintiff alleging inadequate medical/dental care must satisfy

---

[14] Since Kingsley v. Hendrickson, 576 U.S. 389 (2015), some courts have questioned whether a Due Process Clause claim of inadequate medical care requires an affirmative showing of deliberate indifference as required by the Eighth Amendment or whether it requires merely that the conduct "purposely or knowingly used against [the claimant] was objectively unreasonable." Id. at 397.  However, following Kingsley, the First Circuit has continued to apply the Eighth Amendment test to detainee claims of inadequate medical care.  Rancourt v. Hillsborough Cnty., Case No. 20-CV-351-PB, 2022 WL 344812, at *3 (D.N.H. Feb. 4, 2022) (citing Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) and Miranda-Rivera v. Toledo-Davila, 813 F.3d 64 (1st Cir. 2016)), granting motion for reconsideration and dismissing all claims, 2022 WL 1693631 (D.N.H. May 26, 2022).  District courts in this Circuit have done the same. E.g., De La Cruz v. Martin, C.A. No. 21-049-JJM-PAS, 2021 WL 1293449, at *2 n.1 (D.R.I. Apr. 7, 2021) (applying Eighth Amendment standard to pretrial detainee claim of inadequate medical care); Daggett v. York Cty., No. 2:18-CV-00303-JAW, 2021 WL 868713, at *33-37 (D. Me. Mar. 8, 2021) (same), aff'd, No. 21-1374, 2022 WL 216565 (1st Cir. Jan. 25, 2022); Vick v. Moore, Civil No. 19-cv-267-SJM-AKJ, 2019 WL 7568227, at *5-6 (D.R.I. Oct. 11, 2019) (same), adopted sub nom. Vick v. United States Marshals Service, 2020 WL 161023 (D.R.I. Jan. 13, 2020).  Guided by this precedent and mindful that neither Plaintiff nor Defendants have argued that the Court should apply an objective reasonableness test to the aspects of the claims that arise under the Fifth/Fourteenth Amendments' Due Process Clauses, my analysis is grounded in traditional Eighth Amendment jurisprudence.  See Est. of Nicholas Sacco v. Hillsborough Cty. House of Corrs., 561 F. Supp. 3d 71, 81-83 (D.N.H. May 20, 2021).

a two-prong test to prove "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (per curiam).

For Prong One of this test, the complaint must plausibly allege, as an objective matter, that the claimant has a serious medical need that received inadequate care. Abernathy, 984 F.3d at 6. "A serious medical need is one that involves a substantial risk of serious harm if not adequately treated." Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); see Gaudreault v. Mun'y of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990) (per curiam) (serious medical need is one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"). Adequate medical care is not the most sophisticated care available; nor is it care that is ideal, or of the prisoner's choosing. Kosilek v. Spencer, 774 F.3d 63, at 82, 85 (1st Cir. 2014). When the claim is based on delayed medical/dental treatment, the pleading must plausibly allege that the delay itself posed the substantial risk of injury. Lombardo v. Graham, 807 F. App'x 120, 123 (2d Cir. 2020) ("in cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay"); Gaudreault, 923 F.2d at 208 (seriousness of prisoner's needs may be determined by reference to effect of delay; nothing in the record to suggest injuries were exacerbated by delay); Steele v. Langley, Civil Action No. 07-00422-KD-B, 2009 WL 424588, at *7 (S.D. Ala. Feb. 17, 2009) (negligence in failing to administer blood pressure medication for four months not sufficient for constitutional claim absent evidence that delay caused harm).

The emphasis is on seriousness – the Constitution proscribes treatment that shocks the conscience. Kosilek, 774 F.3d at 83. An inadvertent or negligent failure to provide adequate care is not enough to sustain a constitutional claim. Leavitt v. Corr. Medical Servs., Inc., 645

F.3d 484, 497 (1st Cir. 2011) ("subpar care amounting to negligence or even malpractice does

not give rise to a constitutional claim").  Further, if a prisoner has received significant medical

attention and the dispute is over its adequacy, "federal courts are generally reluctant to second

guess medical judgments."  Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981).

Prong Two is subjective.  Abernathy, 984 F.3d at 6.  It requires that the pleading allege

facts sufficient to demonstrate that each defendant was aware of the serious need for treatment,

or of facts from which the need could be inferred, and still failed to provide it.  Barrett, 292 F.

Supp. 2d at 285.  "Deliberate indifference" requires a showing of "greater culpability than

negligence but less than a purpose to do harm . . . showing a conscious failure to provide medical

services where they would be reasonably appropriate."  Coscia v. Town of Pembroke, 659 F.3d

37, 39 (1st Cir. 2011).  To show such a state of mind, the plaintiff must allege facts permitting

the inference that the defendant had actual knowledge of impending harm, easily preventable,

and yet failed to take the steps that would have easily prevented the harm.  Zingg, 907 F.3d at

635.

For defendants who do not provide hands-on medical treatment, this inquiry must

examine whether they directed or otherwise had actual or constructive knowledge of allegedly

inadequate care provided by others.  Guadelupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir.

2016); Silva, 2022 WL 1091336, at *13.  Liability is premised on the named defendant's own

acts or omissions despite actual or constructive knowledge of grave risk of harm, evincing

reckless or callous indifference to constitutional rights.  Guadalupe, 819 F.3d at 515.  Generally,

a supervisory official cannot be exposed to individual liability premised on application of a

policy unless he formulated the policy or had the power and authority to alleviate the foreseeable

consequences of the policy.  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir.

1994).  Thus, unless the policy is so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional deprivation, policy-based liability is not imposed on individuals who "could not change or alter [the] polic[y]."  Brownlee v. Quarterman, Civil Action No. 5:07cv106, 2009 WL 56954, at *8 (E.D. Tex. Jan. 7, 2009) (director of state correctional institutions not liable under § 1983 where he did not create and could not alter or change denture policy).

2.      *Analysis – Prong One*

*Syphilis/Mental Health*.  Focusing on Prong One, several of Plaintiff's claims may be swiftly disposed of because the complaint lacks facts that plausibly allege the requisite "substantial risk of serious harm."  Barrett, 292 F. Supp. 2d at 285.  First, Plaintiff's allegation of a delay of a month and a half before he was diagnosed with and treated for suspected syphilis fails to state a claim because there is no allegation permitting the inference that such a delay exposed Plaintiff to any risk.  See Tyner v. Nowakowski, Case No. 19 C 1502, 2021 WL 4318085, at *6 (N.D. Ill. Sept. 23, 2021) (two-month delay in syphilis treatment alleges "at best negligence").  Also failing to state a claim is the allegation of inadequate mental health treatment; apart from that conclusory contention, the pleading essentially concedes that Plaintiff received extensive mental health treatment, with an alleged delay only in the provision of talk therapy and no allegation that this delay created any risk of serious harm.  Further, because the allegations against Ms. Rodrigues consist solely of the conclusory statement that she "acted with Deliberate Indifference when she delayed proper Mental Health Therapy," supported by the single factual allegation that she met with Plaintiff and two weeks later he started talk therapy, Complaint ¶¶ 90, 93, 98, 104, I also recommend that she be dismissed from the case.

*Cardiac/Pulmonary Issues*.  Plaintiff's allegations about his elevated heart rate and emphysema relate to conditions that could be serious.  The problem is that, as with Plaintiff's allegations about mental health treatment, the complaint establishes that Plaintiff received extensive treatment for these conditions while at the Wyatt, including multiple encounters with nurses and Dr. Blanchette, one trip to the RIH emergency room and prescriptions for medications.  The only potential deficiencies in this course of treatment are Dr. Blanchette's medical decision not to perform a diagnostic test (the cardiac sonogram), which the Court may infer was prescribed by RIH medical professionals, and Plaintiff's dissatisfaction with seeing a nurse when he wanted to see Dr. Blanchette.  The allegation that Dr. Blanchette denied Plaintiff a prescribed diagnostic procedure fails to state a claim because it establishes at most a disagreement between Dr. Blanchette and providers at RIH; such a claim must be dismissed because it is well settled that "allegations [that] simply reflect a disagreement on the appropriate course of treatment . . . fall[] short of alleging a constitutional violation."  Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980).  Similarly, Plaintiff's thwarted desire to see the doctor, not the nurse, fails as the foundation for a viable claim because the Constitution does not impose a duty "to provide care that is ideal, or of the prisoner's choosing."  Kosilek, 774 F.3d at 82.  Plaintiff's pleading contains nothing permitting the inference that not having a cardiac sonogram or seeing a nurse instead of the doctor resulted in medical treatment that was inappropriate or in any way deficient.  At bottom, Plaintiff's cardiac/pulmonary claims fail at Prong One because Plaintiff has not alleged serious risk or actual detrimental effect associated with any aspect of the extensive treatment he received for these conditions.[15]  Gaudreault, 923 F.2d at 208; Lombardo, 807 F. App'x at 123; Steele, 2009 WL 424588, at *7.

---

[15] Plaintiff also alleges that Dr. Blanchette was dismissive and insulting during one of the appointments for treatment of Plaintiff's cardiac/pulmonary condition.  Complaint ¶ 45.  With no allegation of constitutionally

*Arm Sores/Scarring*.   Regarding arm sores and related scarring, the complaint contains the conclusory statement that the delay in treatment caused "continued pain and permanent scaring [sic] on . . . Plaintiff's arms."  Complaint ¶ 96(A).  However, the complaint's factual allegations establish that Plaintiff received considerable treatment for this medical issue, which sometimes improved and sometimes got worse, requiring more aggressive treatment.  The pleading reflects many appointments with nurses and at least four with Dr. Blanchette, an appointment with an outside dermatologist, various prescriptions for medication (a topical steroid, Bacitracin and Doxycycline) and instructions to not reopen the sores.  The complaint recites that the outside dermatologist's treatment was the same as what had been prescribed by Dr. Blanchette.  Further, the complaint does not specify what is the alleged "delay," which is a serious deficiency in that the complaint's factual allegations make clear that, each time Plaintiff brought his concern about arm sores/scarring to the attention of Wyatt medical providers, he consistently received relatively prompt attention.  Plaintiff's principal dissatisfaction seems to be that the treatment was often from a nurse despite Plaintiff's request to see Dr. Blanchette.  With no allegation that this amounts to anything more than a denial of the treatment of Plaintiff's choosing (a nurse instead of the doctor), Plaintiff's factual allegations about arms sores/scarring should fail at Prong One because the pleading does not permit the inference that treatment was so delayed or inadequate as to shock the conscience, Kosilek, 774 F.3d at 83, or as to expose Plaintiff to a substantial risk of serious harm.  Battista v. Clarke, 645 F.3d 449, 454 (1st Cir. 2011).  Nevertheless, mindful of Plaintiff's *pro se* status and his allegation of "continued pain

---

inadequate medical treatment, such rudeness is verbal conduct that is not an actionable constitutional deprivation. Gandy v. Reeder, 778 F. App'x 149, 151 (3d Cir. 2019) (mere insults do not violate Eighth Amendment); Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (it is "not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way").

and permanent scar[r]ing," before recommending dismissal, I have continued the analysis of this claim below to examine whether it meets the subjective test of Prong Two.

*Refusal to Provide Dentures*.  Regarding the refusal to provide dentures in compliance with USMS policy while Plaintiff was at the Wyatt, resulting in a ten-month delay until he was sentenced in August 2021, the complaint seeks to meet Prong One's requirement of substantial risk of serious harm with the allegation that the refusal resulted in "continued pain, disfigurement and inhibiting his ability to eat."  Complaint ¶¶ 95(A), 100(A).  While inmates certainly have a constitutional right to dental care, Perrino v. White, Case No. 20-cv-941-JL, 2021 WL 5569609, at *2 (D.N.H. Oct. 21, 2021), adopted, 2021 WL 5566991 (D.N.H. Nov. 29, 2021), there is no *per se* constitutional right to dentures, Petrazzoulo v. U.S. Marshals Serv., 999 F. Supp. 401, 410 (W.D.N.Y. 1998).  But if a complaint adds additional facts, courts have held, for example, "that an inmate alleging that he suffers from difficulty eating, severe pain, and disfigurement . . . may have a serious medical need for dentures."  Baughman v. Garcia, 254 F. Supp. 3d 848, 879 (S.D. Tex. 2017) (listing cases), aff'd sub nom. Baughman v. Seale, 761 F. App'x 371 (5th Cir. 2019); see Lugo-Velez v. Fed. Bureau of Prisons, Case No. 115-cv-01212-VEH-JHE, 2017 WL 777189, at *6 (N.D. Ala. Feb. 2, 2017) ("Under certain circumstances, denial of dentures can amount to deliberate indifference under the Eighth Amendment."), adopted, 2017 WL 1951833 (N.D. Ala. May 11, 2019); but see Cummings v. Palmer, No. C17-4010-LTS, 2017 WL 5914680, at *5 (N.D. Iowa Nov. 30, 2017) (if prisoner is candidate for dentures and nutritional needs are met and allegations of only discomfort or inconvenience in eating no serious medical need for dentures).

In this case, Plaintiff does not allege that any competent medical provider opined that dentures were medically necessary nor has he provided concrete facts regarding, for example,

how the difficulty with eating impacted him.  Nevertheless, mindful of his *pro se* status, I find

that Plaintiff's complaint regarding the refusal to have him evaluated or fitted for dentures is

sufficient for the analysis to proceed to Prong Two.

*Failure to Protect from COVID-19*.  Plaintiff's final set of allegations arise from his

having contracted COVID-19 while at the Wyatt.  There is no question that COVID-19 poses a

substantial risk of serious harm to prisoners; further, Plaintiff has alleged that he was harmed by

contracting COVID-19, resulting in serious and ongoing symptoms.  See generally Plata v.

Newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020).  Therefore, the Court's analysis of

this claim proceeds to Prong Two.

### 3.    *Analysis – Prong Two*

Because it focuses on the subjective state of mind of the accused actor, Prong Two

requires an individualized examination of the factual allegations as to each Defendant for each

claim whose analysis proceeds past Prong One.  For the claim based on arm sores/scarring, that

means the Warden, Mr. LaBonte and Dr. Blanchette; for the claim based on the refusal to

provide dentures, that means CFDFC, the Warden and Mr. LaBonte; and for the claim based on

the failure to protect from COVID-19, that means CFDFC and the Warden.  Complaint ¶¶ 100,

102-03, 108, 110-12.

*Arm Sores/Scarring*.  The complaint sets out the conclusory allegation that the Warden

and Mr. LaBonte acted with deliberate indifference in delaying and failing to treat Plaintiff's arm

sores/scarring but is devoid of any allegation that either of them directed or otherwise had actual

knowledge of impending harm due to some deficiency in the extensive treatment by Dr.

Blanchette, the nurses and the independent dermatologist.  Complaint ¶¶ 100(A), 102(B), 110,

111.  Rather, Plaintiff seeks to impose supervisory liability based on the conclusory allegations

that the Warden "[f]ailed to protect the plaintiff['s] rights to proper medical care and treatment

allowing Medical Negligence to occur. Causing the Plaintiff continued issues including . . .

disfigurement, arm pain and permanent scaring [sic]"; and that Mr. LaBonte "[a]llow[ed] Doctor

E. Blanchard [sic] to continually delay Medical Care . . . causing continued pain and scaring [sic]

on the Plaintiff['s] arms." Complaint ¶¶ 95(B), 100(A). These claims fail at Prong Two because

there is simply no link between the conduct of the Warden and Mr. LaBonte as supervisors and

some deficiency in Dr. Blanchette's medical treatment. Boudreau v. Cent. Falls Det. Facility

Corp., C.A. No. 20-324-JJM-LDA, 2020 WL 6064548, at *6 (D.R.I. Oct. 14, 2020) ("There must

be an affirmative link between the supervisor's action or inaction and the subordinate's

behavior"; for the pleading to survive, the allegations must permit the plausible inference that

"the supervisor's conduct led inexorably to the constitutional violation") (internal quotation

marks omitted).

What remains is the factual allegation that Mr. LaBonte responded inappropriately to

Plaintiff's grievance accusing Dr. Blanchette of being rude in instructing Plaintiff not to pick at

the arm sores. Complaint ¶ 67. Specifically, the pleading charges Mr. LaBonte with denying the

grievance with "a complete lie" and "an absurd interpretation of what the Plaintiff quoted the

Doctor as saying." Id. ¶ 67-69. This claim fails because the complaint itself reveals that the

factual allegation is not plausible – as quoted by Plaintiff, Dr. Blanchette's comment ("don't pick

at [arm sores]") is accurately (if more courteously) summarized by Mr. LaBonte ("refrain from

physically manipulating the sores"). Id. ¶¶ 63, 67. And even if Mr. LaBonte's response could be

inferred to be "a . . . lie" and "an absurd interpretation," id. ¶ 67, as Plaintiff alleges, the Eighth

Amendment does not impose a duty to protect Plaintiff from what he perceives as insults and

unkind words in connection with medical treatment.  Gandy, 778 F. App'x at 151; see supra n.15.

Plaintiff also levels the claim based on his dissatisfaction with the treatment of his arm sores/scarring against Dr. Blanchette.  Unlike the Warden and Mr. LaBonte, Dr. Blanchette was directly and significantly involved with the course of treatment of this condition in that he saw Plaintiff at least four times, prescribed a range of medications and referred Plaintiff to an outside dermatologist (who made the same treatment recommendation as Dr. Blanchette).  This claim fails at Prong Two because the complaint lacks any factual allegation that Dr. Blanchette was aware of, caused, or was involved in, any potentially unconstitutional delay or that Dr. Blanchette failed to provide seriously needed treatment.  Barrett, 292 F. Supp. 2d at 285.  At worst, Dr. Blanchette relied on nurses despite Plaintiff's preference to see the doctor; without more, this is not a constitutional deprivation.  Nor does Plaintiff's allegation about Dr. Blanchette's rude comments permit the inference that Dr. Blanchette had "actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented [the] harm."  Zingg, 907 F.3d at 635 (internal citation and quotation marks omitted).  At most, Plaintiff has alleged that Dr. Blanchette used poorly chosen words to give medical advice to Plaintiff about not picking at the sores; this is not actionable.  Bismark, 213 F. App'x at 897; see supra n.15.

*Refusal to Provide Dentures*.  Plaintiff's claim that the CFDFC and Wyatt officials unconstitutionally refused to provide dentures rests on the factual allegation that they were simply implementing a USMS policy that they did not create and could not alter.  That is, Plaintiff alleges that they acted with deliberate indifference in light of their actual or constructive knowledge of Plaintiff's mouth pain, disfigurement and difficulty eating while failing to defy

USMS policy by ordering the dentist to provide Plaintiff with dentures.  Complaint ¶¶ 13-21, 94(A), 100(A), 102(B).  The complaint further alleges that the Warden was aware of Plaintiff's grievance regarding the refusal to fit him for dentures and that he affirmatively asked USMS to reconsider the policy as applied to Plaintiff but his effort on Plaintiff's behalf was unsuccessful in that the USMS denied the request.  Id. ¶¶ 20-21.  The Prong Two issue is whether these allegations are sufficient to impose liability on CFDFC, the Warden or Mr. LaBonte for implementing a USMS policy that they played no part in formulating and could not change.

Regarding CFDFC, an entity, the pleading must plausibly allege that it established and maintained the policy or custom that directly caused the constitutional violation.  Francis v. Carroll, 659 F. Supp. 2d 619, 625-26 (D. Del. 2009) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694-95 (1978) (§ 1983 entity liability is based on policy or custom that inflicts injury)).  Plaintiff's complaint fails at Prong Two because it does not allege any "policy, practice, or procedure of CFDFC or Wyatt [that] is responsible for any [asserted] constitutional violations."  Vick, 2019 WL 7568227, at *6; see Miller v. City of Phila., No. CIV. A. 96-3578, 1996 WL 683827, at *3-4 (E.D. Pa. Nov. 25, 1996) (plaintiff must show that corporation, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm") (internal quotation marks omitted).  Plaintiff's pleading clearly alleges that USMS, not CFDFC, adopted the no-denture policy, Complaint ¶ 94(A); therefore, CFDFC cannot be responsible.  See Dunyan v. Pa. Dept. of Corr's., No. 1:16-CV-02103, 2017 WL 3509243, at *5 (M.D. Pa. Aug. 16, 2017).

Regarding the Warden and Mr. LaBonte, the analysis is similar.  Prison officials who are responsible for oversight of medical care at a prison facility cannot be liable unless the "allegations . . . directly implicate [them] in the ultimate administrative decision to deny

[treatment]." Id. at *7. The mere allegation that such officials implemented a policy that they could not change or failed to order treatment that they lacked the authority to authorize, with no facts permitting the inference that the policy was plainly constitutionally deficient, is insufficient to state a claim. Id. at *6-7; see Brownlee, 2009 WL 5694, at *8 (director of state correctional institutions cannot be liable under § 1983 where he could not alter or change denture policy and lacked power to order dentures); Avila v. Landgrebe, Civil Action No. H-12-2315, 2013 WL 1336586, at *5 (S.D. Tex. Mar. 29, 2013) (plaintiff "must show that the defendants were either personally involved in the alleged deprivations or that the policies they implemented were so deficient that they resulted in the deprivations"), appeal dismissed, No. 13-20586 (5th Cir. Jun. 2, 2014).

The pleading alleges only that the Warden (not Mr. LaBonte)[16] was aware of Plaintiff's grievance about the denture denial but was attentive to Plaintiff's concerns in that he responded by trying to persuade USMS to reconsider. The pleading does not allege that the Warden could change USMS policy or could authorize dental care contrary to USMS policy. The complaint is silent regarding what Plaintiff told the Warden about the impact on him of the delay in getting dentures although the pleading permits the inference that Plaintiff complained of mouth pain, disfigurement and difficulty eating. See Complaint ¶¶ 94(A), 100(A). However, there is no allegation establishing the seriousness of these complaints or that any medical professional opined that these difficulties were serious or that dentures (or some alternative to dentures, such

---

[16] Plaintiff argues that the complaint links Mr. LaBonte to the denture refusal because it is plausible to infer that he "played a direct role in coordinating and scheduling treatment." ECF No. 43 at 11. However, for Prong Two, Plaintiff must demonstrate that Mr. LaBonte "was aware of the need [for dental care] or of the facts from which the need could be inferred" and failed to act. Barrett, 292 F. Supp. 2d at 285. Accepting that the pleading permits the inference of Mr. LaBonte's involvement in appointment coordination/scheduling, I find that such an inference simply does not fill the hole in that the complaint still fails to allege that Mr. LaBonte "had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented [the] harm." Zingg, 907 F.3d at 635 (internal citation and quotation marks omitted).

as a special diet) were medically necessary for Plaintiff.  The complaint is further devoid of any facts permitting the inference that the Warden (or Mr. LaBonte) knew that this well-established USMS policy was *per se* unconstitutional or unconstitutional as applied to Plaintiff because the ten-month delay in fitting him for dentures exposed Plaintiff to a "substantial risk of serious harm," <u>Barrett</u>, 292 F. Supp. 2d at 285; nor are there any facts that demonstrate that either of them acted with "wanton disregard to [Plaintiff's] needs . . . akin to criminal recklessness, requiring consciousness of impending harm, easily preventable."  <u>Abernathy</u>, 984 F.3d at 6 (internal quotation marks omitted); <u>see</u> <u>Farrow v. West</u>, 320 F.3d 1235 (11th Cir. 2003) (prison dentist's deliberate indifference adequately supported based on facts establishing that he prescribed dentures based on serious medical need yet delayed fifteen-months before providing them, causing serious adverse medical consequences).

Based on the foregoing, as pled, I find that the denture-refusal claim fails at Prong Two in that it does not plausibly demonstrate that CFDFC, the Warden or Mr. LaBonte was deliberately indifferent.  Nevertheless, because it is conceivable that Plaintiff may be able to add more facts by amendment, my recommendation that this claim be dismissed would include the recommendation that Plaintiff first be afforded leave to amend, subject to whether this claim is otherwise viable as a cause of action pursuant to <u>Bivens</u> or § 1983, an issue that I consider *infra*.

*Failure to Protect from COVID-19*.  The final Prong Two issue is whether CFDFC or the Warden may be liable for the lack of social distancing at the Wyatt, which caused Plaintiff to contract COVID-19.  For this claim to survive a Fed. R. Civ. P. 12(b)(6) challenge, Plaintiff must provide more than generalized allegations that CFDFC failed to adopt adequate COVID-19 protocols or that the Warden failed to do enough regarding overcrowding, prison movement or housing assignments to adequately control the spread of COVID-19.  <u>Benitez v. Sierra</u>

23

Conservation Ctr., Warden, Case No. 121-cv-00370-BAM (PC), 2021 WL 4077960, at *5-6

(E.D. Cal. Sept. 8, 2021) (citing cases), adopted, 2021 WL 4593841 (E.D. Ca. Oct. 6, 2021).

Without more, this claim fails at Prong Two and should be dismissed, albeit with leave to amend,

subject to whether it is otherwise viable as a cause of action pursuant to Bivens or § 1983.  See,

e.g., Burrell v. Annucci, 9:22-CV-0701 GTS(ATB), 2022 WL 4618737, at *7 (N.D.N.Y. Sept.

30, 2022) ("[n]egligence in the implementation of complex guidelines during a novel [COVID

19] crisis does not constitute deliberate indifference") (internal quotation marks omitted);

Fletcher v. Clendenin, Case No. 1:22-CV-00249-BAM (PC), 2022 WL 874845, at *5-6 (E.D.

Cal. Mar. 24, 2022) (cognizable due process claim requires more "than generalized allegations

that the defendants have not done enough regarding overcrowding or prison movement or

housing assignment to control the spread" of COVID-19).

> B.    Can Plaintiff Assert Any Potentially Surviving Claims as *Bivens* Causes of
>        Action?

Bivens created a judicially implied cause of action for money damages to remediate

certain constitutional deprivations committed by persons acting under color of federal law.

González v. Vélez, 864 F.3d 45, 52 (1st Cir. 2017).  It is the federal analog to § 1983, which

creates a statutory cause of action that supplies civil remedies for constitutional violations

committed by persons acting under color of state law.  Lebron v. Naylor, No. CA 12-688-ML,

2012 WL 6600296, at *2 (D.R.I. Dec. 17, 2012).  To maintain a Bivens action, Plaintiff must

plausibly allege that: (1) defendant deprived him of a right secured by the Constitution and, (2)

defendant acted under color of federal law.  DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008).

The Supreme Court has repeatedly held that Bivens is a strictly limited and "disfavored" cause of

action.  Egbert v. Boule, 142 S. Ct. 1793, 1799-1803 (2022) (internal quotation marks omitted).

Egbert "caution[s]" that in "most every case" Bivens should *not* be extended, noting, "if . . .

called to decide <u>Bivens</u> today, we would decline to discover <u>any</u> implied causes of action in the

Constitution." <u>Id.</u> at 1803, 1809 (emphasis added) (internal quotation marks omitted); <u>see</u>

<u>Minneci v. Pollard</u>, 565 U.S. 118, 131 (2012) (Scalia, J., concurring) (<u>Bivens</u> is "a relic of the

heady days in which this Court assumed common-law powers to create causes of action by

constitutional implication") (internal quotation marks omitted).

 Mindful of these principles, I begin by focusing on several aspects of Plaintiff's

complaint that plainly cannot be asserted under <u>Bivens</u>. For starters, <u>Bivens</u> allows for a private

right of action against federal actors only in their individual capacities; it does not permit suits

against the United States, its agencies or federal officials sued in their official capacities.

<u>DeMayo</u>, 517 F.3d at 14; <u>Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) (<u>Bivens</u> action will not

lie against federal official sued in official capacity), <u>abrogated on other grounds</u>, <u>Aza-Paez v.</u>

<u>United States</u>, 343 F.3d 552 (1st Cir. 2003). Therefore, all of Plaintiff's official capacity claims

must be dismissed to the extent that they are based on actions taken under color of federal law.

Further, "<u>Bivens</u> does not encompass injunctive and declaratory relief where . . . the equitable

relief sought requires official government action." <u>Reardon v. United States</u>, No. 1:21-cv-00361-

LEW, 2022 WL 2304503, at *1 (D. Me. June 27, 2022) (internal quotation marks omitted); <u>see</u>

<u>Hulsey</u>, 2020 WL 5634318, at *2 (a plaintiff "may not seek injunctive relief against federal

officials in a <u>Bivens</u> action").[17] Therefore, Plaintiff's prayer for an injunction and declaratory

relief cannot be sustained under <u>Bivens</u>; I also recommend that all such claims be dismissed.

---

[17] Plaintiff's claims for declaratory and injunctive relief are also now moot because he is no longer held at the Wyatt. <u>Callahan v. Wall</u>, C.A. No. 16-160 S, 2017 WL 3447895, at *5 (D.R.I. Aug. 11, 2017) (claim for injunctive and declaratory relief based on denial of medical care claim mooted upon prisoner's transfer out of facility).

What potentially[18] remains are Plaintiff's claims for money damages from CFDFC and from the Warden and Mr. LaBonte in their individual capacities to remediate the allegedly unconstitutional delay in providing dentures in compliance with USMS policy and the allegedly unconstitutional failure to protect Plaintiff from contracting COVID-19 due to the lack of opportunity to socially distance in the prison setting.  The question for the Court is whether these claims can be sustained as causes of action under Bivens.  For the reasons that follow, I find that they cannot.

A Bivens implied right of action is available in three narrow circumstances.  Drewniak v. U.S. Customs and Border Protection, 554 F. Supp. 3d 348, 353-55 (D.N.H. 2021).  First is Bivens itself, in which the Supreme Court permitted a private right of action for a Fourth Amendment violation after law enforcement officers handcuffed a man in his home in front of his family without a warrant.  Bivens, 403 U.S. at 389; see Drewniak, 554 F. Supp. 3d at 353-54.  Second is Davis v. Passman, 442 U.S. 228 (1979), involving Fifth Amendment violations due to sex discrimination.  Drewniak, 554 F. Supp. 3d at 354.  Third, and pertinent to this case, is Carlson v. Green, 446 U.S. 14 (1980), in which federal corrections officers were sued for violations of the Due Process Clause and the Eighth Amendment based on their refusal to provide prescribed/essential medical treatment, resulting in death.  Id. at 16 & n.1; Drewniak, 554 F. Supp. 3d at 354.

The determination whether a particular constitutional claim may be asserted as a Bivens cause of action involves a two-step analysis.  Egbert, 142 S. Ct. at 1803.  First, the court must analyze whether the claim "arises in a new context or involves a new category of defendants"

---

[18] As noted above, the survival of these claims is contingent on Plaintiff's ability to add facts in an amended pleading that is sufficient plausibly to state a claim.  As currently pled, neither states a viable claim.

different from the three circumstances already approved by the Supreme Court.  <u>Drewniak</u>, 554 F. Supp. 3d at 355 (internal quotation marks omitted); <u>see</u> <u>Egbert</u>, 142 S. Ct. at 1803.  If the claim does not involve a new context or a new category of defendants, a <u>Bivens</u> action is available.  <u>Id.</u> at 356.  However, if the claim seeks to extend <u>Bivens</u> to a new context or new category of defendants, the court must also consider whether there are "special factors counseling hesitation against expanding <u>Bivens</u>," focused both on separation of powers principles, "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," as well as on the availability of alternative remedies.  <u>Id.</u> at 356, 358, 360 (internal quotation marks omitted); <u>see</u> <u>Egbert</u>, 142 S. Ct. at 1803.  If a court has "any reason to pause before applying <u>Bivens</u> in a new context or to a new class of defendants, the court must decline to recognize a <u>Bivens</u> action."  <u>Id.</u> at 356 (internal quotation marks omitted); <u>see</u> <u>generally</u> <u>Egbert</u>, 142 S. Ct. at 1805-06.

Under the first leg of the <u>Bivens</u> extension analysis, the Court must examine the context to determine if Plaintiff's claims are meaningfully different from what was in issue in <u>Carlson</u>. Consistent with the weight of relevant authority, as to Plaintiff's dental claim, this review compels the conclusion that this claim arises in a context that is materially different in that, whether based on the Fifth Amendment's Due Process Clause or the Eighth Amendment,[19] Plaintiff's allegation that CFDFC, the Warden and Mr. LaBonte violated his constitutional rights by complying with USMS policy in refusing to have him fitted for dentures is significantly different from the deadly denial of medically critical prescribed treatment in issue in <u>Carlson</u>.

---

[19] "[S]imply because <u>Carlson</u> extended <u>Bivens</u> to allow an Eighth Amendment claim by a federal prisoner in that context," does not mean that all Eighth Amendment claims are viable under <u>Bivens</u>.  <u>Dissler v. Zook</u>, No. 3:20-CV-00942-D (BT), 2021 WL 2598689, at *4 (N.D. Tex. May 7, 2021) (internal quotation marks omitted), <u>adopted</u>, 2021 WL 2589706 (N.D. Tex. June 23, 2021).

See, e.g., Noe v. United States Gov't, Civil Action No. 121-cv-01589-CNS-STV, 2023 WL

179929, at *1, 3 (D. Colo. Jan. 13, 2023) (Eighth Amendment claim based on refusal to provide

dental crowns presents new Bivens context, factually distinct from Carlson), appeal docketed,

No. 23-1025 (10th Cir. Jan. 31, 2023); Sharp v. United States Marshals Serv., No. 5:20-CT-

03282-M, 2022 WL 3573860, at *1, 4, 7 (E.D.N.C. July 15, 2022) (Fifth Amendment's Due

Process Clause claim based on dental pain, infected/bleeding gums and tooth breaking into

pieces because of impacted wisdom tooth is "vastly different" from cause of action recognized in

Carlson), appeal dismissed sub nom. Sharp v. Turner, No. 22-6952 (4th Cir. Dec. 28, 2022);

Dissler, 2021 WL 2598689, at *1-4 (Eighth Amendment suit against warden for alleged dental

injuries – pain, weight loss, and inability to chew food – because of two-year delay in obtaining

dentures arises in different context from Carlson).  Similarly, courts considering the issue hold

that prison officials' failure to protect an inmate from contracting COVID-19 due to prison

conditions, such as inability to socially distance, is a new context from Carlson.  See, e.g., Greer

v. Caravajal, No. 5:22-cv-00334-VBF-JDE, 2022 WL 4826513, at *6 (C.D. Cal. June 30, 2022)

(claim of deliberate indifference resulting in exposure to COVID-19 based on prison conditions

arises in new Bivens context as it involves different Eighth Amendment claim than Carlson),

adopted sub nom. Greer v. Carvajal, 2022 WL 4842927 (C.D. Cal. Sept. 30, 2022); Carey v. Von

Blanckensee, 515 F. Supp. 3d 1051, 1057 (D. Ariz. 2021) (claim that prison conditions during

COVID-19 pandemic posed threat to safety arose in new context "because it is substantially and

meaningfully different from the three types of cases in which the Supreme Court has recognized

a Bivens remedy"), appeal dismissed, No. 21-15292, 2021 WL 2026260 (9th Cir. Mar. 11,

2021); Blanding v. Fed. Bureau of Prisons, Civil Action No. 21-1115, 2021 WL 5139912, at *5

(E.D. Pa. Nov. 4, 2021) (finding context different, court declines to recognize Bivens claim for

claim based on non-medical conditions of confinement COVID-19 measures).  Thus, the context of Plaintiff's potentially viable claims is materially different from the context recognized as supporting a <u>Bivens</u> claim in <u>Carlson</u>.

The second leg in the <u>Bivens</u> extension inquiry[20] looks at whether the category of defendants is different from what was recognized in <u>Carlson</u>, in which "federal prison officials" were sued.  <u>Carlson</u>, 446 U.S. at 16.  As applied to a private entity (like CFDFC)[21] operating a federal prison facility under contract with a federal agency,[22] the Supreme Court has directly addressed the issue, holding that such a claim based on the denial of medical treatment may not proceed as a <u>Bivens</u> action.  <u>Correction Services Corp. v. Malesko</u>, 534 U.S. 61 (2001).  More recently, the Supreme Court extended <u>Malesko</u>, holding that a plaintiff may not bring a <u>Bivens</u> action against the individual employees of a private correctional facility (such as the Warden and Mr. LaBonte) for failing to provide adequate medical care in violation of the Eighth Amendment.

---

[20] The Court could stop its analysis with the finding that the context is different; the <u>Bivens</u> extension inquiry is driven forward if either the context or the defendant is different.  See <u>Quinones-Pimental v. Cannon</u>, No. 3:20-cv-01443-JAW, 2022 WL 826344, at *24 (D.P.R. Mar. 17, 2022) (law does not require that both context and defendants must be different to preclude <u>Bivens</u> cause of action), <u>appeal docketed</u>, No. 22-1307 (1st Cir. Apr. 29, 2022).

[21] Over the years, this Court has struggled how to categorize CFDFC in light of its status as an entity authorized by the State of Rhode Island, R.I. Gen. Laws §§ 45-54-1, <u>et seq</u>., and created by the municipality of Central Falls, which is involved in its governance.  See <u>Vick</u>, 2019 WL 2325996, at *2 (CFDFC is Wyatt's "municipal operator"); <u>Mendez v. Martin</u>, C.A. No. 15-408ML, 2016 WL 2849598, at *5 (D.R.I. April 19, 2016) (corporation that operates Wyatt is "quasi-public"), <u>adopted</u>, 2016 WL 2732182 (D.R.I. May 10, 2016); <u>Rodriguez v. Murphy</u>, No. CA 12-510-M, 2013 WL 433159, at *1 n.1 (D.R.I. Feb. 1, 2013) (facility refers to itself as a "quasi-public adult detention facility") (internal quotation marks omitted), <u>aff'd</u>, No. 13-1308 (1st Cir. Aug. 16, 2013); <u>Lin Li Qu v. Central Falls Detention Facility Corp.</u>, 717 F. Supp. 2d 233, 236 (D.R.I. 2010) (Wyatt is "private facility owned by" CFDFC); <u>Correia v. Dept of Homeland Sec.</u>, C.A. No. 08-352S, 2009 WL 68733, at *1 (D.R.I. Jan 6, 2009) (CFDFC is a "public corporation"); <u>Lawson v. Liburdi</u>, 114 F. Supp. 2d 31, 34 (D.R.I. 2000) (CFDFC is public corporation that owns Wyatt).  This debate is not material to the outcome of this case – whatever CFDFC may be, for purposes of the <u>Bivens</u> extension analysis, it unambiguously is <u>not</u> owned and operated by the United States and therefore is different from the federal officials sued in <u>Carlson</u>.  <u>Carlson</u>, 446 U.S. at 16; <u>see generally</u> <u>Egbert</u>, 142 S. Ct. at 1803.  That is, by contrast with detention and correctional facilities owned and operated by the United States, for purposes of <u>Bivens</u>, Wyatt is "privately[]operated."  See <u>Sarro v. Cornell Corrections, Inc.</u>, 248 F. Supp. 2d 52, 54 (D.R.I. 2003).

[22] <u>See</u> R.I. Gen. Laws § 45-54-1(c) (corporation must enter into contract for the operation of the facility with USMS).

Minneci, 565 U.S. at 131; see Pope v. Geo Group, 18-cv-6900 (BMC) (LB), 2019 WL 79426, at

*2 (E.D.N.Y. Jan. 2, 2019) ("Minneci also bars a Bivens claim against a privately employed

individual for the inadequate provision of medical care in violation of the Fifth Amendment")

(internal quotation marks omitted). Minneci is crisp in its holding:

> [W]here . . . a federal prisoner seeks damages from privately employed personnel
> working at a privately operated federal prison, where the conduct allegedly
> amounts to a violation of the Eighth Amendment, and where that conduct is of a
> kind that typically falls within the scope of traditional state tort law . . . the
> prisoner must seek a remedy under state tort law.

565 U.S. at 131.

With both a new context and new defendants, the Court's Bivens extension analysis must

next examine whether there are special factors counseling against extending Bivens to imply a

right of action for Plaintiff's dental and COVID claims. This step requires focus on separation of

powers considerations, as well as whether alternative remedies are available. Drewniak, 554 F.

Supp. 3d at 356-60. These considerations tip decisively against a Bivens extension for this case.

In Malesko, the Supreme Court emphasized that Bivens is not "a proper vehicle for

altering an entity's policy." 534 U.S. at 74. Thus, from a separation of powers perspective,

Bivens is particularly unsuited to be the vehicle for asserting claims challenging the

constitutionality of USMS policy for when dentures may be provided or the constitutionality of

prison conditions resulting in physical proximity that increases the risk of COVID-19. See, e.g.,

Greer, 2022 WL 4826513, at *7 (claim of deliberate indifference to health and safety due to

noncompliance with COVID-19 protocols targets broad prison policies and poses separation of

powers concerns with "impact on governmental operations systemwide," which counsels against

extending Bivens) (internal quotation marks omitted); Sharp, 2022 WL 3573860, at *7-8

(mindful that courts have eschewed extensions of Bivens for alleged failures to provide adequate

dental treatment to federal prisoners, court holds that special factors counsel against <u>Bivens</u> extension); <u>Dissler</u>, 2021 WL 2598689, at *5 (in case challenging constitutionality of denture delay and inadequate dental care, court holds that "the administration of the federal prison system qualifies as a special factor that should prevent the Court's creating an implied cause of action under <u>Bivens</u> for the contexts presented by this case") (internal quotation marks omitted). Further, as the Supreme Court emphasized in <u>Minneci</u>, when the different defendant is acting under color of federal law, but is "privately employed," so that state tort law provides an "alternative, existing process capable of protecting the constitutional interests at stake," this constitutes a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." <u>Minneci</u>, 565 U.S. at 125-26 (internal quotation marks omitted). Thus, extending <u>Bivens</u> to this case is inappropriate because of separation of powers considerations and because Plaintiff has alternative remedies available, including both his pending state law tort claims and the claims he might have brought under FTCA. <u>Greer</u>, 2022 WL 4826513, at *7.

Based on the foregoing and guided by <u>Egbert</u>'s caution that <u>Bivens</u> should rarely be extended, 142 S. Ct. at 1803, I recommend that the Court decline to extend <u>Bivens</u> to Plaintiff's potentially viable claims. Therefore, I recommend that all claims based on allegedly unconstitutional actions under color of federal law should be dismissed.

C.   <u>Can Plaintiff Assert Any Potentially Surviving Claims as § 1983 Causes of Action?</u>

Although Plaintiff concedes that the complaint invokes <u>Bivens</u> and alleges that all Defendants were acting under color of federal law, Plaintiff now argues that the Court should interpret the complaint as alternatively asserting a § 1983 cause of action. To support this argument, Plaintiff directs the Court to cases decided by this and other courts, which hold that

constitutional claims against CFDFC and its employees may alternatively be asserted pursuant to § 1983 because CFDFC was created by a municipality pursuant to state law to "carr[y] on the traditional public function of prison operations" and therefore may be deemed to act under color of state law for purposes of § 1983.  Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp. 2d 114, 140-41 (D.R.I. 2004) ("[CFDFC] and the individuals [it] employ[s] act under color of state law purposes of . . . § 1983"); see, e.g., Lehal v. United States, 13-cv-3923 (DF), 2015 WL 9592706, at *14 (S.D.N.Y. Dec. 29, 2015) (citing Lacedra and holding that federal constitutional claims asserted against Wyatt's operator, CFDFC, and its employees are properly analyzed under § 1983 rather than Bivens); Mathew v. Cent. Falls Det. Facility Corp., C.A. No. 09-253S, 2011 WL 6056713, at *8 (D.R.I. Sept. 30, 2011) (citing Lacedra and holding that, although individual Wyatt employees cannot be sued under Bivens, there may be potentially viable claim under § 1983), adopted, 2011 WL 6097978 (D.R.I. Dec. 6, 2011), aff'd, No. 12-1094 (1st Cir. June 12, 2014) (unpublished judgment).[23]

Clashing with Lacedra, another decision from this Court noted that, although CFDFC was authorized by state law and created by a municipality to provide a facility in which USMS could house federal pretrial detainees, the individuals incarcerated at the Wyatt were arrested by federal law enforcement agents, charged with federal crimes, remanded in the custody of USMS and detained under authority of the United States.  Sarro, 248 F. Supp. 2d at 54-61.  Because the source of the law underpinning all of the actions in issue in Sarro (detaining the claimant, failing to protect him from attack and failing to provide adequate medical care for his injuries) was unambiguously federal, Sarro holds that Wyatt officials acted under color of federal law.  Id. at

---

[23] The focus of the First Circuit's non-precedential judgment of affirmance of Mathew is on the lack of a viable Bivens claim against the "Wyatt Defendants" and the alternative availability of "state-law tort actions."  Mathew, No. 12-1094, slip op. at 3-4.  The First Circuit did not address the theory that potentially viable § 1983 claims may be asserted in the alternative.

61; accord Ayala-Gutierrez v. Doe, 697 F. App'x 285, 286 (5th Cir. 2017) (per curiam)
(dismissing § 1983 suit against entity that plaintiff argued derived authority to operate jail from
state because plaintiff was federal detainee); Rowland v. Sw. Corr., LLC, Civil Action No. 420-
CV-00847-ALM-CAN, 2021 WL 4206409, at *8-11 (E.D. Tex. Aug. 17, 2021) (federal pre-trial
detainee held on federal charges in custody of USMS detained at private facility operating under
authority of county/state pursuant to USMS contract cannot sue under § 1983), adopted, 2021
WL 4191433 (E.D. Tex. Sept. 15, 2021); Freeman v. Corizon Health, Inc., No. 4:16-CV-00426-
JAJ, 2018 WL 10580740, at *3 (S.D. Iowa Oct. 1, 2018) ("private contractor providing medical
services to a federal prisoner through a county's contract with the federal government is not
acting under color of state law"; § 1983 claim dismissed), aff'd, 778 F. App'x 410 (8th Cir.
2019) (per curiam).

Having review these decisions, I conclude that Sarro got this issue right.[24]  To determine
whether a defendant acted under color of law "requires an assessment of the totality of the
circumstances" involving consideration of "the nature and circumstances of the . . . conduct and
the relationship of that conduct to the performance of . . . official duties." Zambrana-Marrero v.
Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (internal quotation marks omitted); United States
v. Smith, 743 F. App'x 943, 947-48 (11th Cir. 2018) (per curiam) (local law enforcement officer
who was special deputy U.S. Marshal on federal task force was federal actor while engaged in
execution of state search warrant adopted by Marshals); see Ward v. Schaefer, Civil Action No.
16-12543-FDS, 2021 WL 1178291, at *28 (D. Mass. Mar. 29, 2021) (private physician alleged
to be liable based on interactions with federal government agency cannot be sued for acting

---

[24] Sarro's conclusion, however, that a Bivens action can proceed against individual employees of a private prison
facility, 248 F. Supp. 2d at 62-64, was subsequently overruled by Minneci, 565 U.S. at 131.

under color of state law).  Consistent with this principle, <u>Sarro</u> properly focuses on the nature and circumstances of the Wyatt officials' actions in relation to the claimant and the source of the authority by which the claimant was held and exposed to allegedly unconstitutional conditions:

> Here, Sarro and other individuals incarcerated at Wyatt had been arrested by federal law enforcement agents and charged with federal crimes.  They were being detained under authority of the United States government pending disposition of the charges against them.  By law, they were in the custody of the United States Marshal who exercised ultimate authority over them.  The power to detain them was derived solely and exclusively from federal authority and the defendants, in effect, acted as the Marshal's alter ego.  The fact that the Marshal temporality delegated the task of detaining those prisoners to the defendants did not convert that detention into anything other than an exclusively governmental function.

248 F. Supp. 2d at 61 (citations omitted).  Based on this analytical approach, <u>Sarro</u> finds the Wyatt's "private prison guards to be federal actors within the meaning of <u>Bivens</u>."  <u>Id.</u>

Confirming the appropriateness of its analysis is <u>Sarro</u>'s consistency with the approach that has been used to find that police officers employed by a state or its municipality are deemed to be federal actors when they are sued for actions taken while participating on federal investigative teams, serving federal process and implementing federal law.  <u>See, e.g.</u>, <u>Smith</u>, 743 F. App'x at 947-48; <u>Nelson v. Weber</u>, Case No. 3:16-cv-05680-BHS-JRC, 2017 WL 3034641, at *3-4 (W.D. Wash. May 19, 2017) (state/local law enforcement officers designated as federal task force members are federal actors because conduct occurred when they were acting as special deputies with USMS pursuant to federal statute; who pays them is not determinative), <u>adopted</u>, 2017 WL 3017632 (W.D. Wash. July 17, 2017); <u>DeMayo v. Nugent</u>, 475 F. Supp. 2d 110, 115 (D. Mass. 2007) ("State police officers deputized as federal agents under the DEA constitute federal agents acting under federal law."), <u>rev'd on other grounds</u>, 517 F.3d 11 (1st Cir. 2008); <u>Amoakohene v. Bobko</u>, 792 F. Supp. 605, 608 (N.D. Ill. 1992) (defendant officers are either state actors or federal actors; when plaintiffs were stopped, activity was conducted as part of

federal mission of local officers, making them federal actors).  Importantly, the law is clear: in a specific instance, a defendant must be either a state actor or a federal actor – he cannot be both. West, 2015 WL 1959467, at *8 n.7; Amoakohene, 792 F. Supp. at 608.

Based on the foregoing, and mindful that, at all relevant times, Plaintiff was a federal detainee and subsequently an adjudicated federal prisoner who had been remanded into the custody of USMS and ordered to be held at the Wyatt, a federal detention facility under USMS contract, by the United States District Court for the District of Massachusetts based on charges (and subsequently an adjudication) that he violated federal law, as well as that the potentially viable claims against CFDFC, the Warden and Mr. LaBonte arise due to their exercise of federal authority, including their holding of Plaintiff pursuant to a federal detention order and their implementation of USMS policy regarding dentures, I find that they are federal actors, acting under color of federal law (as Plaintiff alleged).  Therefore, I recommend that the Court should decline Plaintiff's invitation to interpret the complaint as alternatively stating a § 1983 cause of action, as well as that Plaintiff should not be afforded an opportunity to amend the pleading to add causes of action based on § 1983.

## IV.    State Tort Claims Arising under Rhode Island Law

Plaintiff alleges that Dr. Blanchette, Mr. LaBonte and Ms. Rodrigues committed "[m]edical [n]egligence."[25]  Complaint ¶¶ 95-96, 98.  While the complaint does not allege that Dr. Blanchette committed medical malpractice, it may be liberally interpreted as making such a claim.  And with Plaintiff seemingly a resident of Massachusetts or New Hampshire,[26] his state

---

[25] Plaintiff argues that, liberally construed, the pleading may also be interpreted as stating a claim for intentional infliction of emotional distress, although the elements of this claim are entirely missing from his complaint.  See Corvello v. New England Gas Co., Inc., 460 F. Supp. 2d 314, 325-26 (D.R.I. 2006).

[26] See n.1 *supra*.  For a prisoner, the court should presume that he remains a citizen of the state where he was domiciled before incarceration.  Hall v. Curran, 599 F.3d 70, 72 (1st Cir. 2010).

law claims may well be appropriately pursued in this Court based on diversity pursuant to 28

U.S.C. § 1332, although the pleading does not allege diversity jurisdiction.

Defendants' motions to dismiss do not directly focus on whether these state law claims

pass Twombly/Iqbal muster.[27]  However, mindful of the Court's obligation to dismiss at any time

a case filed by a prisoner that fails to state a claim, 28 U.S.C. § 1915(e)(2)(B)(ii), I have

reviewed them *sua sponte* and find that Plaintiff has failed to allege facts sufficient to plausibly

establish that any Defendant breached a duty imposed by state law that resulted in injury.

Nevertheless, because Plaintiff may be able to assert a viable claim arising under state tort law, I

recommend that Plaintiff be afforded thirty days to file an amended pleading that alleges facts

that plausibly set forth the basis for this Court's subject matter jurisdiction and that meet the

required elements of a state law tort claim.  See, e.g., Ho-Rath v. Rhode Island Hosp., 89 A.3d

806, 812 (R.I. 2014) (claim of medical negligence against entity not identified in statutory

definition of medical malpractice "sound[s] in ordinary negligence"); Foley v. St. Joseph Health

Servs. of Rhode Island, 899 A.2d 1271, 1277 (R.I. 2006) (setting out elements of medical

malpractice); Corvello, 460 F. Supp. 2d at 326-26 (setting out elements for intentional infliction

of emotional distress).  If he fails to do so, I recommend that his state law claims also be

dismissed.

**V.      Conclusion**

Based on the foregoing, I recommend that the pending motions to dismiss (ECF Nos. 29,

31) be granted and Plaintiff's complaint be dismissed, provided that he first be afforded thirty

---

[27] This is not a waiver.  All Defendants understood the pleading as asserting only constitutional claims; further, Defendants CFDFC, the Warden and Mr. LaBonte and Ms. Rodrigues challenged Plaintiff's allegations of negligence by arguing (correctly) that negligence is not actionable under § 1983.  ECF No. 31 at 1-2 nn.1-2.  Until the issuance of this report and recommendation containing my liberal interpretation of the pleading as stating state law tort claims as separate causes of action, Defendants did not clearly have notice of the need directly to challenge them.

days to file an amended pleading that invokes the Court's diversity jurisdiction and states any

viable state law tort claim that Plaintiff may have.  If Plaintiff fails to file an amended pleading

or if the amended pleading fails to state a claim or fails to invoke the Court's subject matter

jurisdiction, I recommend that this case be dismissed with prejudice.  Any objection to this report

and recommendation must be specific and must be served and filed with the Clerk of the Court

within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure

to file specific objections in a timely manner constitutes waiver of the right to review by the

district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero,

524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st

Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 28, 2023